## AMERICAN LAND COMPANY v. GRADY ET AL.

1. VENDOR AND VENDEE : *Special contract between, as to settlement of adverse claim— Measure of recovery under, etc.*

An understanding between the agent of a vendor of lands and the vendee, that the latter should take such steps as he should deem prudent to settle the claim of an adverse occupant, or sue him if necessary, and that in either case the vendee was to be allowed upon his debt for the land such sums as he might expend, authorized the vendee to employ an attorney and pay him a reasonable fee and to execute such bond as might be necessary in the prosecution of the suit, and if the sureties in such bond have damages to pay in consequence of the failure of such suit, they have the right to be subrogated to the rights of their principal, the vendee, against the vendor for recovery of such damages and interest.

2. SPECIFIC PERFORMANCE : *Assignee of title bond may have—Damages in*

The assignee of a title bond succeeds to all the rights of his assignor under it, and may sue in equity for specific performance and recover damages when performance is impossible. The measure of damages in such case, will be the amount paid upon the purchase, whether to the vendor or to others with his assent or directions, with the understanding express or implied, that it would be taken and credited as part of the consideration.

3. SAME : *Attorneys Fee—Pleading.*

Where there is a general prayer for damages in such cases, the attorney's fee paid by the vendor in a suit to recover the land from an adverse occupant, may be allowed though not specifica lly prayed for.

4. ATTACHMENTS : *In Equity.*

The Civil Code authorizes proceedings by attachment, in suits in equity.

APPEAL from *St. Francis* Circuit Court, in Equity.

Hon. J. N. CYPERT, Circuit Judge.

EAKIN, J. :

On the 28th of February, 1872, Charles Butler, as trustee for the American Land Company, held a legal title to the land in controversy. The defendant, Wiley Smith, agreed to purchase the land from the company, and upon that day said Butler for himself and as trustee, together with Erastus Corning and Joseph S. Fay, other trustees of the company, executed through W. A. Goodman, their attorney in fact, a title

bond to said Smith, reciting the sale for the sum of $1,219,80-100, of which $100 was paid in cash, and for the balance Smith executed two notes, one for $571.30, payable December 1st, 1872, and the other for $548.50, payable December 1st, 1873, with interest from date on each at six per cent. per annum. The bond was conditioned in the usual form, for a conveyance on payment, with warranty of title.

At the time of the purchase the land was in the possession of defendant, Robert Anderson, holding adversely to both parties, under an independent legal title. Smith afterwards brought suit against Anderson for the possession in the St. Francis Circuit Court. The complainants, Grady and Kuthley, became security in a bond with Smith in that suit, whereby the land was taken from Anderson and given to Smith. The suit was finally decided in Anderson's favor, and judgment rendered against the obligors in the bond for the sum of $750 and costs. Afterwards Smith, by writing, assigned the title bond to Grady and Kuthley and directed the deed to be made to them in accordance with its provisions.

This bill was filed by said Grady and Kuthley against the company, the trustees, Smith and Anderson, alleging: That complainants had joined in the bond given in the possessory action for the accommodation of said company; that the proceedings were instituted by the advice, concurrence and consent of the Land Company, the trustees and said Charles Butler; that complainants became bound in said bond on the faith and credit of the obligors in the title bond; that they were forced to satisfy the judgment and had done so; that by the assignment of the title bond they had obtained all the rights of Smith against the obligors; that they have the right to be indemnified againt the judgment for damages, and to have the amount allowed them out of the purchase money due on the land, if the contract for sale can be consummated, or if not,

to have a return of the money. They say they have offered to pay said company, through said Goodman, said balance, if they would allow said sum so recovered as damages out of the purchase money, and make title in accordance with the title bond, which was refused, and complainants now offer to do so.

It was further alleged that said Walter Goodman was properly authorized to act in the premises.

Complainants pray, as to Anderson, that his title be declared void; and, as to the company and trustees, and said Butler, in his own right, that they be decreed to perform the stipulations of the title bond, allowing in payment of the purchase money said sum recovered against complainants as damages: Or, if the contract cannot be performed, that complainants may have a decree against them for that sum, together with said sum of $.00, paid by Smith on the purchase and "*all proper damages*" for the non-performance of the contract, and for general relief. They state further that they are residents of St. Francis county, in this State, and append to their complaint an affidavit that the Land Company, and said trustees are non residents of the State, that they are bound to complainants in the sum of $1,500, which complainants believe they ought to recover. Wherefore an attachment was issued and levied on other lands of the company.

Corning, one of the trustees, was dead when the suit commenced, and during its progress Butler and Fay resigned. Other trustees, Greenough and Carden, were substituted. The Land Company and the trustees appeared and answered. They admit the agency of Goodman and that he transacted the whole of the business on the part of the vendors. They say that Smith at the time of the purchase informed Goodman that Anderson claimed the land by some sort of tax title, but deny that Goodman knew he was in possession. They deny that Smith instituted the proceedings at law by and with their advice

and consent, or that of their said agent. They allege that Smith himself undertook to settle the question as to the pretended tax title. The agent agreed in that case, to allow Smith as a credit on the purchase "any reasonable cost that he might properly incur in settling the matter," and "if necessary, that Smith should institute proper suit," but they deny that Smith had any authority to employ counsel, or to institute a suit that could by no possibility, be sustained. They deny that they knew of the employment of counsel by Smith until after the suit was in progress ; or that they requested any one to go on a bond for the purpose of the suit ; or that complainants became so bound on the faith and credit of respondents, or for their accommodation. They deny any tender of the purchase money, but admit the proposition to pay them if they would allow the said sum of $750, and now proffer to make to them full payment of the purchase money.

They make their answer also a cross-complaint againt Anderson, and join in the prayer of the bill to have his title set aside.

The answer of Smith supports the bill. With regard to defendant Anderson and his title, it suffices to say, that in various ways by motions to strike out, and by demurrers to the bill and cross bill, he continually resisted being made a party to the proceedings at all. All of which being overruled he saved exceptions, and answered, setting up legal title paramount to that of the company. His answer was sustained, and he was dismissed upon hearing, with costs against the company. He joins in the appeal, and his attorney complains here of the errors of the court in compelling him to abide the litigation, and not dismissing him at first upon his motions and demurrers. His counsel has certainly very respectable authority for maintaining that as he was not a party to the contract sought to be enforced, nor claiming by privity from either of the par-

ties, he ought not to be harrassed in the contest between them growing out of the contract; that it gave neither any equities against him, and that he had a right to await an action at law from any one better entitled. But if we were to concede that, it is somewhat perplexing to discover any mode of aiding him here. He has gone out with his title confirmed, and with provisions for recovery of his costs, and as to him we can only affirm. His trouble has been the accidental result of his position, and unless he can make out a case of malicious prosecution, he is remediless, not only here but elsewhere. If the design of Anderson had been to settle the law upon the points raised, he should have stood upon his demurrer.

With regard to the other parties, the court upon final hearing held that complainants ought not to be required to take the title of the land company; that the bond should be rescinded; that complainants were entitled to the purchase money paid, and to be reimbursed in the amount expended by them on the account of, and as securities for, the company and Smith. A reference was made to the clerk for an account of those amounts, with interest at six per cent on the amounts expended on account of the law suit from the date of the period when complainants offered to perform their part of the contract. The clerk found due the sum of $1,134.28, for which a decree was rendered against the company, and the trustees, Canada and Greenough. The attachment upon other lands, sued out at the beginning of the suit, was sustained, and they were ordered to be sold for the satisfaction of the decree. In arriving at the amount, the master in his account included the sum of $100 paid by Smith in the action at law, as an attorney's fee to Aldridge, and interest on the whole amount from 17th October, 1874, the time of the offer of complainants to perform, to date of decree. All the defendants, save Smith, appealed.

The evidence in this cause leads the mind to the conclusion

that there was an understanding between Goodman, acting on behalf of the company, and the trustees, and Smith ; that the latter should take such steps as he might deem prudent, to settle the claim of Anderson ; or in case that could not otherwise be done, to bring suit ; and that, in either case, Smith was to be allowed, upon his debt for the land, such sums as he might expend. It would result that he might employ an attorney for the purpose and pay him a reasonable fee, and execute such bond as might be necessary. There is nothing to show that he acted in bad faith, although there appears to have been a mistake in judgment in bringing an action of forcible entry and detainer. It appears, moreover, that Goodman knew of the proceedings at the time of their commencement, and during their progress ; and, at least, made no objection. Grady and Kuthley signed the bond at the request of Smith and his attorney, Aldridge, with the understanding that the writ was prosecuted by the advice and directions of the land company, which was joined in the writ.

If there had never been any assignment of the title bond to the complainants, they would have had the right in equity, after paying the judgment for damages, to be subrogated to the rights of their principal, Smith, against the company for indemnity, to the extent of the amount paid with interest. Before suit they had paid the judgment in part, and arranged to pay the balance, which they afterwards paid in full.

If, without any judgment against them, and damages paid, they stood merely as assignees of the bond for Smith, they would succeed to all his rights under it. They might sue in equity for specific performance, and pray for damages in case specific performance should be found impossible. The measure of damages, in such case, would be the amount of money which Smith had paid upon the purchase, whether paid to the company itself or to other persons by the assent or direction

of the company, with the understanding, express or implied, that it should be taken as part of the consideration, and so credited. Such sums would be all in effect paid as part of the ·consideration, and would be considered as damages.

Both these rights combined in complainants. They were entitled to indemnity for the judgment paid by them, and to ·other damages on failure to perform the contract, which Smith might have claimed if he had brought the suit. Smith is in the suit and assents to this. All the matters grow out of the transactions resulting from the title-bond and the agreement ·concerning the suit, and the whole relief was properly sought in one bill.

There was no specific prayer for the $100 paid Aldridge, nor was the master specifically directed to take an account of it. But there was a prayer for *damages*, and the account of the master might properly include it as part of the consideration. No proof was returned with the master's report. The refer-·ence, the report and the decree appear all to have been made on the same day, and are recited in the same decree. Some of the items of the report concerning costs, were easily ascertainable upon the spot. Some facts are wanting to show periods affecting calculations of interest, and there are other minor irregularities. It was hasty practice, and somewhat careless. But the parties were all in court, and no one filed exceptions, or asked time to do so. Enough appears from the evidence used on hearing to show that the sum total was within the limits of what complainants might well claim, and we presume the Chancellor thought, as he might well, that substantial justice would be done by the decree.

As for the attachment, our code provisions are broad enough to authorize such a proceeding in an equitable suit. It is the prevailing practice in Kentucky and other States having laws similar to ours. It has been adopted and used here by mem-

bers of the bar, and has heretofore passed *sub silentio* under the notice of the court. Although it does not belong to the traditionary system of equity practice, as adopted here under our territorial government and transmitted to the State, it commends itself to the court as proper under the statutory provisions embracing all civil actions.

Affirm the decree.