# Powell v. Higley.

*Bill in Equity by Purchaser, for Specific Performance of Contract, or Compensation.*

90   103
90   502
90   103
94   435
90   103
97   406
90   103
102   237
102   605

1. *Statute of frauds, as to contract for sale of lands; part performance.* A contract or agreement for the sale of lands, made by an agent without written authority from his principal, is void (Code, § 1732, subd. 5), and will not be specifically enforced; but, if the purchaser is placed in possession, and the principal accepts payment of the consideration, the case is taken out of the influence of the statute.

2. *Specific performance to purchaser, not having complied with contract on his part.*—A purchaser, not having complied with the stipulations of the contract on his part, can not have a decree for specific performance, unless he shows that his failure to perform was caused by the fault of the vendor; as, where he agreed to erect certain improvements on the land within a specified period, but was prevented by the unauthorized interference of the vendor.

3. *Compensation for improvements, on refusal of specific performance.* Where the purchaser files a bill for specific performance, but the evidence shows that it is impossible to enforce performance, though he has entered into possession, and has erected valuable improvements, and that he has no adequate remedy at law, he may ask and have a decree for compensation on account of such improvements, as well as for partial payments made, and have the same declared a lien on the land.


APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 6th March, 1888, by Irwin Buell Higley, against E. B. Powell and C. B. Powell,

[Powell v. Higley.]

who were brothers; and sought the specific performance of a contract for the sale and conveyance to the complainant of several lots particularly described in the written agreement between the parties, which was dated September 7th, 1887, and which was made an exhibit to the bill, in these words: "Agreement between E. B. Powell, party of first part, and Irvin Buell Higley, party of the second part: Whereas party of the second part has this day purchased from party of first part four lots in the town of Cleveland, Alabama, numbered 244, 245, 340, and 341, in block 11 and 14, for the sum of $1,800; now the conditions of this obligation are these: Party of first part agrees to take in payment one new Decker piano," particularly described, "to be subject to order in New York immediately. Party of second part agrees and binds himself to build, within four months from October 1st, 1887, a new two-story residence house on lots Nos. 340 and 341, and within twelve months to build a residence house on lots Nos. 244 and 245, to cost not less than $1,500. Now, in consideration of the above, party of first part binds himself, executors and assigns, to alien and convey said lots to said party of second part, upon the performance of the above conditions. In witness whereof," &c. This writing was signed by the parties named in it, and beneath was written a memorandum without date, signed by C. B. Powell, in these words: "Change contract by striking out 246 and 247, and inserting 340 and 341, and 'and 14' after block 11."

The bill alleged that said E. B. Powell, at the time this contract was entered into, represented himself to be the owner of the property therein described, and complainant had no notice that any other person was interested in it; that he at once sent to New York for a piano such as was described, which was forwarded to Birmingham, "and was accepted by said E. B. Powell or his agents;" that complainant at once proceeded to erect a residence house on lots 340–41, at a cost of not less than $1,500 in cash; that C. B. Powell, who was absent from the city when said contract was made, read it over on his return, made the written change shown by the memorandum above copied, ratified and confirmed the contract as changed, was present when complainant commenced to build a house on the lots, made no objection, and assisted him in marking off the boundaries; that C. B. Powell afterwards notified complainant that the lots belonged to him, gave him notice in writing to surrender the possession, and brought an action at law to recover possession on complainant's refusal. It was alleged, also, on information and belief, that E. B. Powell "has an undivided one-half of said lots, and C. B. Powell is

merely his trustee as to said undivided half;" that E. B. Powell acted as the agent of his brother in making said contract, having written authority for that purpose; or, if mistaken in this, that C. B. Powell is bound by the contract, because he has received the piano, and complainant has been placed in possession under the contract. On these allegations, the complainant prayed an injunction of the action at law, and a specific performance of the contract, offering to complete the houses; or, if specific performance could not be decreed, that he be allowed compensation for the agreed price of the piano, and the value of the improvements erected by him, and that the amount be charged as a lien on the lots.

A demurrer to the bill was filed by C. B. Powell, assigning seventeen specific grounds of demurrer, and his demurrer was adopted by E. B. Powell; but it is unnecessary to state these assignments of demurrer in detail, as the court does not pass on them separately. Separate answers were filed by the defendants. E. B. Powell admitted the making of the contract with complainant, but denied that he represented himself to be the owner of the lots, and alleged that he informed complainant that they belonged to C. B. Powell, and he thought the latter would ratify and confirm the contract; alleged, also, that he had no written authority to bind C. B. Powell, and that he never accepted the piano, having ascertained that complainant had greatly misrepresented the price. C. B. Powell, in his answer, alleged that his brother had no written authority to bind him by a sale of the land, and he so informed complainant before any improvements were erected on the lots; admitted that he signed the memorandum at the foot of the contract, but said that he informed complainant, at the time or before, that he would not sell the lots for less than $1,800, and would not accept the piano at that price, as it was not worth more than $500, but that, if complainant would sell the piano to one Watkins for 100,000 brick to be delivered to him, he would accept the brick in full payment for the lots, and would ratify the contract; and that complainant did sell the piano to said Watkins, but the latter never delivered the brick to respondent.

The court overruled the demurrer to the bill, and also overruled a motion to dismiss for want of equity; and on final hearing, on pleadings and proof, rendered a decree for the complainant, refusing to decree a specific performance of the contract, but granting compensation for the value of the improvements erected on the lots, and charging it as a lien on the property. The defendants appeal, and here assign as error the overruling of their demurrer and motion to dismiss the bill for want of equity, and the final decree.

[Powell v. Higley.]·

CABANISS & WEAKLEY, and SMITH & LOWE, for appellants. (1.) The bill was wanting in equity, (1) because it was prematurely filed, (2) because the complainant had not performed the stipulations and conditions imposed on him by the contract, and (3) because it could not be specifically enforced against him.—*Thompson v. Gordon*, 72 Ala. 455; *Bradford v. Marbury*, 23 Ala. 455; *Grimball v. Patton*, 70 Ala. 626; *Friedman & Loveman v. McAdory*, 85 Ala. 61; *Irwin v. Bailey*, 72 Ala. 472; 21 Cal. 404; Pom. Contracts, 162; Fry on Specific Performance, 286, 64; Waterman on Specific Performance, §§ 27, 725–27. (2.) Specific performance could not be decreed on the evidence, for the reasons above specified, and because of material variances between the allegations and proof. (3.) The right to a specific performance failing, both on the pleadings and proof, the complainant was not entitled to a decree for compensation, but should have been remitted to his action at law for damages.—*Sims v. McEwen*, 27 Ala. 184; *Harrison v. Doremus*, 33 Ala. 463; *Bell v. Thompson*, 34 Ala. 633; 5 John. Ch. 193; 4 John. Ch. 559; 35 N. J. Eq. 82; 78 Ala. 511; 79 Ala. 457.

LANE & WHITE, *contra*, cited *Aday v. Echols*, 18 Ala. 353; *Nagle v. Newton*, 22 Gratt. Va. 814; 70 Penn St. 26; 33 Ark. 305; *Rider v. Gray*, 69 Amer. Dec. 135; 42 Amer. Dec. 521; *Allen v. Young*, 88 Ala. 338.

STONE, C. J.—Many grounds of demurrer were interposed in this case, questioning the sufficiency of the bill. The City Court overruled the demurrer, and at the same time overruled the motion of defendants to dismiss the bill for want of equity. Those rulings are severally assigned as error· We think the bill sufficient, and find no error in either of these rulings.

It is also urged on behalf of appellant, that there is a fatal variance between the allegations of the bill and the proof in the cause, and for that reason the decree should be reversed. We hold that the variances complained of are only incidental to the main inquiry, and that there is a substantial conformity of the proof to the allegations. There is no merit in either of the foregoing objections.

There is very great contrariety of testimony in this record. We think that upon all material questions, save one, there is not much difficulty in arriving at the true state of the facts. We summarize them as we feel authorized to find them reasonably established. *First:* That the legal title to the lots was in C. B. Powell, and he alone was authorized to make a contract of sale, which, *per se*, would be binding under the statute

[Powell v. Higley.]

·of frauds. *Second:* That E. B. Powell was the agent of C. B., his brother, to negotiate sales of the lots, with enlarged dis·cretion, if not some expectant interest, which, as a rule, C. B. Powell would and did ratify and make binding. *Third:* That when C. B. Powell was informed of the sale to Higley, and its terms, he did not repudiate it outright, as being unauthorized, but that he so far sanctioned and approved it, though reluctantly, as to induce Higley to put improvements on the lots, in value ·exceeding that of the lots in their unimproved state; and that he stood by and witnessed the erection of the improvements, without remonstrance or objection.—*Forney v. Calhoun County,* 84 Ala. 215. *Fourth:* That when the piano arrived, he still failed to disaffirm the contract, and knowingly permitted the improvements to progress, until Watkins, by flight, disgrace and confessed insolvency, demonstrated that nothing could be expected from him.

The question upon which the testimony leaves the mind less satisfied is, whether, when the piano arrived, Powell so far recognized and treated it as his own, as to effect its sale through Higley as his agent. On this question, the testimony of Higley and that of Powell stand diametrically opposed. But, taking no account of the testimony of Watkins, who is heavily impeached, Higley's testimony is materially corroborated by that of the witnesses Jemison and Lusky. In reaching the conclusion he did, the chancellor must have found this issue in favor of Higley, and we concur with him.

The contract, as we have said, was not, when made, enforce·able, by reason of the statute of frauds. When the piano, the promised consideration of the lots, was received by Powell— we mean by received, when he assumed control and dominion over it, by directing its exchange for brick—this was payment for the lots, and took the contract without the statute of frauds. Code of 1886, § 1732, subd. 5, and note; *Heflin v. Milton,* 69 Ala. 354.

The chancellor did not decree the contract to be specifically performed; but, as we understand the record, his failure to do so was not induced by any finding of his that the contract was not fair, just, reasonable and equal.—3 Brick. Dig. 361, § 415 *et seq.* Passing on the question of values, the testimony inclines us to believe that, in negotiating the trade, both the lots and piano were overvalued. We are not convinced that the four lots had a greater value than the piano. The real difficulty was, that the year had expired, and Higley had not built the second house, which his contract bound him to build within the year. This rendered it impossible to enforce the specific performance of the contract. If this failure was the

[Powell v. Higley.]

result of his own neglect, or non-excused failure to perform his part of the stipulations, then chancery will grant him no relief, but leave him to his remedy at law, if he have any. Was his failure the result of his own non-excused fault? The chancellor must have found that it was not, and we agree with him. The contract was made in September, 1887, and by its terms, Higley was to erect on the lots one house in four months after October 1 then next, and a second house within twelve months. The first house was nearing completion, when in January, 1888, Powell notified Higley to surrender the possession of the lots to him at once, or pay him eighteen hundred dollars, the purchase-price. This was before the expiration of the four months allowed for the erection of the first house, but after the receipt and sale of the piano. Soon thereafter Powell instituted the action of ejectment to turn Higley out of possession. This excused Higley from proceeding to erect the second house, and fixed the fault of the failure on Powell.

The chancellor, although he declined to decree the specific execution of the contract, did not dismiss the bill. On the contrary, he decreed that complainant was entitled to relief, and ordered, adjudged and decreed, "that compensation be allowed and made to complainant for the payment made by him in and by the piano, . . . and for the improvements made by him upon said lots, . . . and that said lots" (describing them) "be and they are hereby charged in favor of the complainant . . . with an amount equal to the value of said piano, with interest thereon, . . . and also with an amount equal to the value of said improvements, with interest thereon, . . . less an amount equal to the value of the use of said premises during the complainant's possession thereof." He then made an order referring the question of taking the account to the register.

It is contended for appellant, that if appellee has any cause of action, it is a legal demand, and he should have been remitted to that forum for its assertion. We can not agree to this, for two reasons: *First*, the title being in C. B. Powell, and this contract made in the name of, and signed by E. B. Powell, complainant's right was and is equitable, and can only be adequately enforced in equity. *Second*, Higley, under the circumstances of this case, was entitled to have a lien declared on the lots for his reimbursement, and equity alone can declare and enforce such lien. There may be other reasons, but the foregoing are sufficient.

In *Aday v. Echols*, 18 Ala. 353, that able jurist, Chief Justice Dargan, said: "The rule is, that when a purchaser enters into possession, and upon the faith of a contract has made val-

[Myers v. Conway & Co.]

uable improvements upon the land, and afterwards files a bill to compel specific performance, but fails to make such a case as entitles him to that relief, the bill may be retained for the purpose of allowing him compensation, if he has not a full and adequate remedy at law."—*Goodwin v. Lyon*, 4 Por. 297; *Allen v. Young*, 6 So. Rep. 747; 88 Ala. 338; 1 Story Eq. § 749a; *Phillips v. Thompson*, 1 Johns. Ch. 131; *Pratt v. Law*, 9 Cr. 456; *Masson & Beranson's Appeal*, 70 Penn. St. 26; *Pinnock v. Clough*, 42 Amer. Dec. 521; *Rider v. Gray*, 69 *Ib.* 135; *Amer. Land Co. v. Grady*, 33 Ark. 550; *Nagle v. Newton*, 22 Grat. 814; Waterman Spec. Perf. § 515.

We think the principle declared in *Aday v. Echols*, 18 Ala. 353, precisely covers this case, and that the City Court did not err in the decree rendered.

Affirmed.

| | |
|---|---|
| 90 | 109 |
| 94 | 454 |

| | |
|---|---|
| 90 | 109 |
| 97 | 441 |

| | |
|---|---|
| 90 | 109 |
| 103 | 670 |

| | |
|---|---|
| 90 | 109 |
| 106 | 123 |